```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
TINA NOWAK,

                         Plaintiff,            05-CV-6273T

            v.                                 DECISION
                                               and ORDER
LOWE'S HOME CENTERS, INC.,

                         Defendant.
_____
```

## INTRODUCTION

Plaintiff, Tina Nowak ("plaintiff" and/or "Nowak" ), brings this action pursuant to Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law, claiming that she was subjected to sexual harassment while working for her former employer, defendant Lowe's Home Centers, Inc., ("defendant" and/or "Lowe's"), and that she was fired from her job in retaliation for complaining of sexual harassment.

Lowe's contends that plaintiff was terminated for violating company policy, and that discrimination or retaliation played no role in its decision. Moreover, Lowe's contends that plaintiff failed to report any alleged harassment, and without knowledge of the alleged harassment, Lowe's argues that as a matter of law it could not have retaliated against plaintiff. Lowe's now moves for summary judgment, arguing that no reasonable jury could find that it discriminated against plaintiff as she claims.  For the reasons set forth below, defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff Tina Nowak was hired by Lowe's Store Manager Scott Lee ("Lee") on October 8, 2003 for the position of Sales Manager. At that time, Chris Fox ("Fox") was the Administrative Manager, a position that

made him a peer of the Sales Manager (plaintiff's position) in the store's hierarchy. See Nowak Dep. Ex. 1 p. 84 ("Ex. 1"). As a result, plaintiff did not have to report to Fox and he did not have input into her evaluations, salary reviews or other personnel matters. See Declaration of M. DeRoche ¶ 2 ("Ex. 4").

From October 2003 through February 2004 Nowak contends that she would often "butt heads" with Fox. See Ex. 1 pp. 117. Similarly, Fox testified that he and plaintiff "butted heads" on their views of how to operate the business.[1] See Fox Dep. Ex. 7 pp. 69-70 ("Ex. 7"). For instance, plaintiff described Fox as having an "in your face" personality. See Ex. 1 p. 150-151. Meanwhile, Fox described himself as very "[h]ands on, communicative, direct." See Ex. 7 p. 55. Indeed, according to former Human Resources Manager Susan Holtz ("Holtz"), there was a personality conflict between Nowak and Fox. See Holtz Dep. Ex. 6 p. 215 ("Ex. 6").

Plaintiff also claims that she was sexually harassed by Fox when he once called her a "bitch." See Ex. 1 p. 153. Further, plaintiff contends that on one occasion Fox allegedly looked down her blouse and observed that she was wearing a purple bra. See id. In addition, plaintiff testified that one day, after returning from Starbucks with a drink and commenting that she hated whipped cream, Fox purportedly responded by stating "I'd like to whip your cream." See id. pp. 162-164. Notably, Nowak testified that nobody at Lowe's ever asked her to have sex or no one asked her for sexual favors, nor ever touched her in a sexual or offensive manner, nor ever took any action against her because she

---

[1]Fox testified that he and Nowak differed in their perspectives on how to run the business. See Ex. 7 p. 50.

rejected a sexual request or advance, or ever showed any sexually offensive pictures, toys or objects. See Ex. 1 pp. 152, 178-179.

With respect to Fox, plaintiff testified that Fox never asked her for sex or sexual favors, never touched her in a sexual or offensive manner, never accused her of engaging in sexual or sexists behavior. He also never made any sexual gestures toward her and never showed her any sexual or offensive pictures, toys or objects in the workplace. See id. pp. 181-182. Moreover, plaintiff never complained to Fox that he treated her in a sexually inappropriate manner and she never reported any of these incidents to anyone at Lowe's.[2] See id. Accordingly, notwithstanding her awareness of Lowe's policies relating to harassment, plaintiff never approached any managers concerning the behaviors she now alleges to be sexual harassment. Further, plaintiff's affidavit, which was verified on the same day that plaintiff's opposition papers were due now states, among other things, that she informed Lee on December 18, 2003, January 14, 2004 and February 19, 2004 that the actions Fox was taking towards her were hostile and that Fox was retaliating against her for complaining about sexual harassment against him. Plaintiff claims that Lee failed to take any substantive action to stop the sexual harassment. Significantly, plaintiff testified she has no evidence suggesting that she was fired for complaining of inappropriate sexual conduct or sexual harassment at Lowe's. See Ex. 1 p. 134.

Fox was assertive and confrontational with both male and female employees and indeed several men, not just women, complained about Fox's

---

[2]Plaintiff was aware of Lowe's policies prohibiting discrimination and harassment. She further understood that there were procedures at Lowe's for reporting sexual harassment. See Ex. 1 pp. 90-93; Ex. 4 at ¶ 8 attaching Equal Employment Opportunity Policy 101, No Harassment Policy 103 and Open Door Policy 304.

treatment toward them. See Ex. 6 p. 202. In fact, Lee told Fox that he received complaints from both male and female employees about his working style.³ See Ex. 7 pp. 61-62. As an example, Robert Kettles, a male employee complained that Fox was tough on him. See id. pp. 55-56. Moreover, Ron Hall, another male employee complained about Fox being harsh. See Ex. 6 pp. 199-200. Plaintiff also contends that, although not directed at her, on one occasion Fox referred to women in her presence as a "whole bunch of bitches." See id. pp. 177-178. At another time, Fox allegedly used the word "bitch" when referring to a female dog while telling a joke. See id. In addition, plaintiff testified that she overheard Fox ask Zone Manager Peter Szklanka if he heard the joke, "have you sprayed yourself with Windex lately, because I can see myself in your panties." See id. pp. 167-168. Moreover, plaintiff alleges that she heard Fox ask an Administrative Department employee "have you been a bad girl, bad little girl[?]" and asked her if she needed a spanking. See id.

On January 31, 2004, plaintiff was the manager on duty and her responsibilities included closing down the cash office.⁴ While admitting that cash register 17 was not shut down and closed on the night of January 31st resulting in the retention of money in the register overnight, plaintiff signed the till log worksheet for January 31, 2004 next to the bag number for register 17 in the "secured in safe" column,

---

³Plaintiff alleged that Fox was written up by Lee because Lowe's employees were complaining about Fox's management style. Some employees were complaining that Fox is intimidating, "Holds a grudge," "Gives you the silent treatment," "Always has to have his own way," "Creates a tense atmosphere," "Harasses people," "He is mean," "Chauvinist,""Confrontational," "Creates a hostile environment," "disrespectful" and "Gets in your face." See Plaintiff's Ex. T-2.

⁴Nowak testified that she was aware of the importance of Lowe's money handling and store opening and closing procedures. See Ex. 1 p. 102.

indicating that she placed the money from register 17 into the safe, when in fact she did not.[5] Further, on February 1, 2004, in violation of yet another Lowe's company policy, plaintiff unlocked and entered the store alone.[6] See Ex. 1 p. 117. After entering the store, plaintiff went to register 17, took the money and "put it in one of the till bags and took it to the safe." See id. pp. 118-119. Plaintiff then closed the register alone, once again in violation of Lowe's policy requiring two employees to be present when closing a register.[7] See id. Thereafter, plaintiff instructed a Head Cashier to sign where a manager was required to sign verifying that the money was in the safe. See id. pp. 121, 123; Ex. 7 pp. 77-78. The Head Cashier is not a manager and is not authorized to sign such reports. Accordingly, plaintiff's conduct violated Lowe's Money Handling policy, Store Opening and Closing Safety Procedures and the Best Practices: Manager on Duty Program. See Ex. 2 pp.98-99; Ex. 4 ¶¶ 14-21.

The store's surveillance videos verified that plaintiff violated Lowe's procedures. As a result, DeRoche informed Lowe's Regional Human Resources Director, Catherine Keown ("Keown") of plaintiff's conduct on January 31 and February 1, 2004. Keown advised DeRoche that plaintiff's conduct amounted to multiple "Class A"[8] violations and recommended that Lowe's terminate plaintiff's employment. See Ex. 4 ¶ 23. DeRoche agreed

---

[5] Nowak admits that failing to shut down the register and leaving money in a register overnight violates Lowe's procedures.

[6] Nowak failed to re-lock the door behind her, which was also a violation of Lowe's policy. See Ex. 4 ¶ 15.

[7] Nowak admits that two employees are required to verify a cash pickup and that she violated this policy when she acted alone and placed the till bag from Register 17 in the cash office. See Ex. 1 pp. 119-120.

[8] A Class A violation is defined as "includ[ing] the most serious misconduct and repeated job performance problems. These serious violations normally will result in immediate discharge." Some examples of Class A violations include: "Dishonesty of any type" and "Falsification of Company records." See Plaintiff's Ex. R

with Keown's recommendation and spoke with Lee and another Store Manager, Bo Csemez ("Csemez") concerning plaintiff's violation of various Lowe's policies and procedures and Keown's advise was to terminate plaintiff's employment. See id. ¶¶ 15, 24.  Csemez agreed to terminate plaintiff's employment based on DeRoche's recommendation that plaintiff's conduct constituted a Class A violation.[9] Indeed, Csemez instructed Lee to terminate plaintiff's employment. Accordingly, on February 23, 2004, Lee informed plaintiff that her employment was terminated due to her actions on January 31, 2004 and February 1, 2004. See Ex. 1 pp. 126-128.

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure prescribes summary judgment where the evidence demonstrates that there is no genuine issue of fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. Gallo v. Prudential Residential Serv., 22 F.3d 1219, 1223 (2d Cir. 1994). If, after considering evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Id. at 1224.

Summary judgment dismissing an employment discrimination case is warranted only where a plaintiff cannot provide evidence to support an essential element of her claim. See Schanbel v. Abramson, 232 F.3d 83 (2d

---

[9] DeRoche contends that she is not aware of any other employee who committed the same acts and violations of Lowe's policies as plaintiff and did not have his or her employment terminated. See Ex. 4 ¶ 26.

Cir. 2000); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998). It is well settled that the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." Rule v. Brine, Inc. 85 F.3d 1002, 1011 (2d Cir. 1996). Rather, such affidavits are to be disregarded. See Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotations omitted). Nonetheless, to defeat a motion for summary judgment, a plaintiff must rely on more than mere conclusory allegations that the discrimination occurred. "Indeed, the salutary purposes of summary judgment--avoiding protracted, expensive and harassing trials--apply no less to discrimination cases than to commercial or other areas of litigation." See Meiri v. Dacon, 759 F.2d 989,998 (2d Cir.1985).

## II. **Plaintiff's Title VII and Human Rights Law Discrimination Claims**[10]

### 1. Hostile Work Environment

"[T]o prevail on a hostile work environment claim, a plaintiff must demonstrate: (1) that [the] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the

---

[10] The standard governing sex discrimination claims is the same whether pursued under Title VII or the Human Rights Law. See Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n.4 (2d Cir.1995).

conditions of [the] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." See Schwapp, 118 F.2d at 110. Whether the environment may be considered sufficiently hostile or abusive to support such a claim is to be measured by the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Proving the existence of a hostile work environment involves showing both "objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir.2002).

Defendant argues that no reasonable jury could find that the conditions to which plaintiff claims to have been exposed are severe or pervasive enough to establish a hostile work environment claim. Defendant claims that plaintiff testified that she was not subject to any sexual advances or touching. Moreover, she testified that Fox never made any sexual gestures towards her. Rather, in the nearly five months of employment at Lowe's, Nowak complains of three isolated incidents directed at her by her co-worker Fox. The incidents include the following: the comment by Fox calling her a "bitch;" the observation by Fox that plaintiff was wearing a purple bra; and the comment by Fox where he allegedly said he would like to "whip your cream" in response to plaintiff's statement about hating the whipped cream on her coffee drink.

"Simple teasing, offhand comments and isolated incidents (unless extremely serious)" will not survive summary judgment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Considering all of the comments made to plaintiff, this Court finds that the above conduct is neither sufficiently severe or pervasive to constitute an objective or subjective hostile work environment. Moreover, the term "bitch" has been held not to have a sexual connotation in circumstances very similar to those in this case. See Moore v. Transitional Servs., 1998 U.S. Dist. LEXIS 1900 (E.D.N.Y. Feb. 20, 1998). In Moore, a female plaintiff brought a claim for sexual harassment because she was called a "fat bitch" by a male co-worker. The two co-workers had difficulty working together and the court found evidence suggesting a personality conflict between them. Further, the Court found that the mere fact that a man calls a woman a "fat bitch" does not transform inter-office conflict into actionable sexual harassment. Id. at 11.

Similar to Moore, here there was also a personality conflict between plaintiff and Fox as evidenced by their testimony where they indicated that they "butted heads" with each other. However, Fox's one-time use of the word "bitch" toward plaintiff does not lead to the inference that he was discriminating plaintiff because of her gender. See Brown v. Henderson, 257 F.3d 246, 254-255 (2d Cir. 2001) (gender neutral conduct cannot contribute to the creation of an actionable hostile work environment); see also Hasbrouck v. BankAmerica Hous. Servs., 105 F.Supp.2d 31, 37 (N.D.N.Y. 2000) (An employee must allege facts sufficient to support a reasonable inference that the conduct actually constituted discrimination because of sex).

While Fox's alleged observation that plaintiff was wearing a purple bra may have been inappropriate, it does not constitute behavior of an extremely offensive nature as to alter the condition of plaintiff's employment under Title VII. See Alfano, 294 F.3d at 373. As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." See id. at 374, citing Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997); see also Harris, 510 U.S. at 21. Similarly, the alleged "whip your cream" comment was an isolated statement and is not sufficiently continuous in order to be deemed pervasive as required by Harris. In the instant case this Court finds that the alleged conduct falls well short of establishing a hostile environment and thus summary judgment on plaintiff's hostile work environment claim is granted.[11]

It is also pertinent to note that, inasmuch as plaintiff seeks to hold Lowe's liable for the alleged harassment by Fox (a co-employee), plaintiff must demonstrate "a specific basis * * * for imputing [to Lowe's] the conduct that created the hostile environment." See Schwapp, 118 F.3d at 110 (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir.1996)). If the harasser is a supervisor, Lowe's is presumed liable. See Burlington Indus, 524 U.S. at 742; Faragher, 524 U.S. at 807. "When a 'co-employee' - as distinct from a supervisor - is

---

[11] While plaintiff has identified only three incidents directed towards her, plaintiff also mentions four other alleged isolated comments that were not directed toward her, but which she claims to have "overheard" in what can only be interpreted as an attempt to bolster her sexual harassment claims. These comments include the following: Fox referring to women as a "whole bunch of bitches;" Fox allegedly using the term "bitch" when referring to a female dog while telling a joke; Fox asking a male employee if he had heard a joke relating to Windex and underwear; and Fox asking another employee if she had been a bad girl and needed spanking. Under the authority cited above, these isolated comments are not sufficient to create an objectively hostile or abusive work environment. See Koschoff v. Henderson, 109 F.Supp. 332, 346 (E.D.Pa. 2000) (mistreatment and disrespect unmotivated by the plaintiff's gender does not create a hostile work environment).

alleged to have engaged in harassing activity, the 'employer will generally not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it.'" See Tomka, 66 F.3d at 1305; see also Quinn, 159 F.3d at 766. Here, plaintiff testified at her deposition that she never approached any manager concerning Fox's alleged sexual harassment.

### 2. Plaintiff's Retaliation Claim

Retaliation discrimination claims are analyzed under the McDonnell Douglas burden-shifting test. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this test, for a plaintiff to prevail she must first establish a prima facie case of discrimination by showing: (1) she is a member of a protected class; (2) she was qualified to hold her job; and (3) she was subjected to an adverse employment action under circumstances giving rise to an inference of discrimination. See Schanbel, 232 F.3d at 83. Once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason ("LNDR") for the adverse employment action. Once the defendant proffers a LNDR, the burden then shifts back to the plaintiff to show that the defendant's LNDR was pretextual and that the defendant's real motivation was discriminatory. Id. Applying the above principles in this case, even if plaintiff is a member of a protected class and is qualified to hold her job at Lowe's, she cannot show the third element for retaliation, which is causation.

It is well settled that "[t[he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000); see also Soliman v. Deutsche Bank AG, 2004 WL 1124689 *12 (S.D.N.Y. 2004).

In Soliman, summary judgment was granted against the plaintiff's retaliation claim because the plaintiff never told his employer that his co-worker was sexually harassing him or making any statements that could reasonably be construed as such. Id. at *13. Likewise, plaintiff cannot demonstrate that she ever complained about any of the alleged conduct on which she attempts to base her claims. Plaintiff can provide no evidence that she engaged in any protected activity at any point during her employment at Lowe's, or that Lowe's was aware of any activity by plaintiff that could be considered protected.

Plaintiff's testimony concerning lack of retaliatory animus defeats her retaliation claim. Plaintiff testified that she never approached any managers concerning behaviors she now alleges to be sexual harassment. However, after Lowe's filed its papers in support of summary judgment, plaintiff prepared an affidavit, which was verified on the same day that plaintiff's opposition papers were due, contradicting her earlier testimony. Contrary to her deposition testimony, plaintiff now states, among other things, that she informed Lee on December 18, 2003, January 14, 2004 and February 19, 2004 that the actions Fox was taking towards her were hostile and that Fox was retaliating against her for complaining about sexual harassment in which Fox was engaging.

Significantly, plaintiff testified she has no evidence suggesting that she was fired for complaining of inappropriate sexual conduct or sexual harassment at Lowe's. See Ex. 1 p. 134. Further, plaintiff does not provide any particular or corroborating information in her affidavit that would lend credibility to these conclusory allegations and therefore, they must be disregarded on that basis alone. See Podell v. Citicorp Diners Club, Inc. 112 F.3d 98, 101 (2d Cir. 1997) (litigant

opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his or her version of relevant events is not fanciful); see also Mack, 814 F.2d at 124 ("It is well settled in this circuit that a party's affidavit which contradicts [her] own prior deposition testimony should be disregarded on a motion for summary judgment.")

Lowe's lawfully terminated plaintiff's employment due to her numerous policy violations with regard to her admitted failure to close out every register on the evening of January 31, 2004 and her attempt to cover up her mistake by coming into the store alone the next day and then directing a subordinate employee to falsify documentation. Lowe's terminated plaintiff because they determined that she violated the Money Handling, Store Opening and Closing and Manager on Duty Best Practices policies leading to a Class A violation by an employee requiring termination. Thus, this Court finds that plaintiff is unable to establish a prima facie case of retaliatory discrimination.

Even if plaintiff could demonstrate a prima facie case, she cannot establish that the LNDR offered by Lowe's, namely that her employment was terminated because she violated multiple company policies and procedures on January 31 and February 1, 2004 resulting in a Class A offense, was pretextual. Plaintiff never registered a complaint of sexual harassment and there is no evidence that Fox played any role in the decision to terminate plaintiff's employment. Indeed, DeRoche, the Human Resources Manager involved in the decision of whether or not to terminate plaintiff was unaware of any complaints of sexual harassment made by plaintiff. Further, DeRoche is not aware of any other employee who committed the same acts and violations of Lowe's policies as plaintiff and did not have

his or her employment terminated. See Ex. 4 ¶ 26. Therefore, defendant's motion for summary judgment on plaintiff's retaliation claim is denied.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted and plaintiff's Complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         March 21, 2007